IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Linda B. Hagins, ) | C/A No. 3:04-23312-CMC |
| ) | CR No. 3:03-1086 |
| Petitioner, ) | |
| ) | |
| -versus- ) | **OPINION and ORDER** |
| ) | |
| United States of America, ) | |
| ) | |
| Respondent. ) | |
| _____ ) | |

Petitioner, a federal inmate proceeding *pro se*, seeks relief pursuant to 28 U.S.C. § 2255. The Petition was filed in this court on December 17, 2004, asserting three grounds for relief. Respondent moved for summary judgment on January 21, 2005, to which Petitioner responded on March 30, 2005.

Ground One of the petition asserts this court erred in calculating the amount of loss to the victim, thereby violating Petitioner's rights under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and its progeny. Ground Two alleges Petitioner's counsel was ineffective for failing to argue against an abuse of trust sentencing enhancement applied to Petitioner. Ground Three asserts the enhancement applied to Petitioner's sentence violates *Blakely v. Washington*, 542 U.S. 296 (2004).[1]  As these grounds for relief are either procedurally defaulted, without merit, or unavailable to Petitioner, the court finds Respondent is entitled to summary judgment on all claims.

In December, 2003, Petitioner was charged with defrauding her employer out of a substantial amount of money by using interstate wire transmissions in violation of 18 U.S.C. § 1343. Petitioner

---

[1] At the time Petitioner filed her § 2255 petition, *Blakely* had been decided, but the Supreme Court had not applied *Blakely* to the federal sentencing guidelines in *United States v. Booker*, 543 U.S. ___, 125 S. Ct. 738 (2005).

entered into a plea agreement with Respondent which included a stipulation that the amount of loss was $230,788.02. This court accepted Petitioner's guilty plea and sentenced Petitioner to twenty-four months' imprisonment, to be followed by three years' supervised release. On May 24, 2004, an Amended Judgment and Commitment (J&C) order was entered by this court. This amended J&C order modified the restitution order by listing two payees, Petitioner's employer and its insurance company. The amended J&C order did not change the total amount of restitution. Petitioner did not take an appeal to the Fourth Circuit Court of Appeals from either J&C order. This § 2255 petition was timely filed December 17, 2004.

Petitioner's first ground for relief asserts she should be "given credit" for the payment of $178,413.02 made to her employer by its insurance carrier. Petitioner chose not to file a direct appeal of her criminal conviction and sentence. Petitioner is therefore precluded from asserting this claim in a § 2255 petition because it is procedurally defaulted. As noted by the Fourth Circuit:

> In order to collaterally attack a conviction or sentence based upon errors that could have been but were not pursued on direct appeal, the movant must show cause and actual prejudice resulting from the errors of which he complains or he must demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack. . . . The existence of cause for a procedural default must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel. . . . And, in order to demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack, a movant must show actual innocence by clear and convincing evidence.

*United States v. Mikalajunas*, 186 F.3d 490, 492-93 (4th Cir. 1999) (citations omitted). *See also United States v. Sanders*, 247 F.3d 139, 144 (4th Cir. 2001) (citing *Bousley v. United States*, 523 U.S. 614, 621 (1998), for same proposition).

Petitioner seeks to overcome her default by asserting she can meet the cause and prejudice standard enunciated in *United States v. Frady*, 456 U.S. 152 (1982). Petitioner attempts to provide the "cause" for her default by arguing she could not raise the loss issues in a direct appeal because this court issued an Amended J&C order identifying an additional victim–but notably not changing the total amount of loss–after Petitioner's original time for appeal had expired. Therefore, Petitioner contends, she was impeded in raising the issue of amount of loss in a direct appeal.[2] Petitioner believes a "shadow of doubt on the amount attributed to the offense" lingers because the victim's insurance carrier only paid a portion of the total loss to which she stipulated. The court finds this contention to be without merit. Nothing prevented Petitioner from filing an appeal of either J&C order if she so desired. The amount paid by the victim's insurance carrier is a matter between the victim and its carrier and has no bearing on the actual loss suffered, an amount to which Petitioner stipulated in her plea agreement and agreed to under oath during her plea colloquy.

Petitioner seeks to establish the prejudice prong of the *Frady* test by asserting she disputed the amount of loss to her attorney "on several occasions" and that she "always disputed [some portion of the amount] that was attributed to my offense." Petitioner's Resp. at 1, filed Mar. 30, 2005.[3] Petitioner's counsel, Allen B. Burnside, has filed an affidavit indicating Petitioner "always

---

[2]Petitioner admits she received a copy of the amended J&C and did not file an appeal. *See* Resp. at 2, filed Mar. 30, 2005.

[3]Petitioner does not allege the additional payee is somehow not proper. At sentencing, Petitioner's counsel raised the possibility of a payment by the victim's insurance carrier. The parties discussed whether the court could order payment to the insurance company which had not, at that point, decided to pay the claim. *See* Sentencing Hrg. Tr. at 11-13. The court determined Petitioner's employer was the proper payee. At no time did Petitioner assert that she opposed payment to the insurance company or that its potential payment of her employer's insurance claim should impact her total restitution.

3

admitted the $174,134.14 that had [sic] directly deposited in her account should be counted as a loss. She also contended that some portion of the $56,653.88 was not received by her. Other than her word, she had no proof that these amounts were not taken by her. There was also no evidence that any other person employed by the victim was also an embezzler." Aff. Allen B. Burnside at 2, filed Sept. 8, 2005. Burnside also avers he and Petitioner discussed the effect of challenging the amount of loss and "[Petitioner] and I concluded that a challenge to the higher loss was not in her best interest." *Id*. Petitioner has not responded to this affidavit.

Petitioner offers counsel's failure to raise this issue as evidence of alleged ineffective assistance of counsel. The standard governing ineffective assistance of counsel claims is found in *Strickland v. Washington*, 466 U.S. 668 (1984). In order to succeed on such a claim, Petitioner must first show her counsel's performance was "deficient," *Strickland*, 466 U.S. at 687-88, and that such deficiency resulted in actual prejudice to Petitioner. *Id*. As to the first prong of the *Strickland* test, a defense attorney's conduct is deficient if it fails to meet a standard of "reasonably effective assistance." *Id*. at 687. An analysis of an ineffective assistance of counsel claim can initially focus on the prejudice prong of the *Strickland* test, as "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland*, 466 U.S. at 697.[4]

The court finds Petitioner's arguments regarding the amount of loss unpersuasive. It appears Petitioner may have raised her concerns with counsel, yet at no time during the plea colloquy, during the period for submitting objections to the Presentence Report (PSR), nor during the sentencing

---

[4]Petitioner does not contend that she would not have pleaded guilty and decided to go to trial. Therefore, it is not necessary for this court to conduct an objective analysis of Petitioner's decision to plead guilty as directed in *Hill v. Lockhart*, 474 U.S. 52 (1985).

4

hearing did Petitioner assert to this court that she disputed any of the stipulated loss amount.[5]

Petitioner has produced no evidence that her counsel would have had any reason to believe Petitioner did not or could not understand the court's comprehensive Rule 11 proceeding, wherein she was questioned about her role in the offense, and admitted, under oath, that she was responsible for the amount of loss stipulated to in the plea agreement. *See* Guilty Plea Tr. at 31-36. Therefore, because this claim is defaulted and Petitioner has not made the requisite showing of cause and prejudice necessary to overcome this default, Respondent is entitled to summary judgment on this claim and it is dismissed.

---

[5]At the Rule 11 hearing, Petitioner did hesitate in agreeing to the amount of restitution stipulated, but in the end, agreed that the $230,788.02 was amount of restitution to which she was stipulating. The following exchange took place:
> [The Court]: Was there anything in the indictment in terms of an allegation of fact that was wrong in any way?
> A: No.
> Q: Okay. So, you are satisfied that it was accurate?
> A: Yes.
> Q: No, Don't say 'yes' if it is not accurate. It is important because your presentence report is going to be based on that. If there is something in there that is not right, tell me now.
> A: As far as I know, everything in here is accurate.
> [Prosecutor]: You[r] Honor, if I could, I think part of the reason she hesitates when she was interviewed by [the case agent], initially, she acknowledged virtually all of the aspects of the scheme as are laid out in the indictment. I think in terms of medical reimbursement, perhaps, and maybe some of the expense reimbursements, there was some question in her mind . . . . I simply wanted to alert the court to that being the possible reason for Ms. Hagins having some question about the full $230,788.02 that is alleged in the indictment. . . .
> [The Court]: Let's do it this way, Ms. Hagins. You agree you committed the acts. You may not agree that you committed every one of them, but you agree that you committed the acts and committed the crime?
> A: Yes, Ma'am.
> Q: And you are stipulating the amount of loss and the amount of restitution?
> A: Yes.

Guilty Plea Tr. at 34-36.

5

Petitioner's second ground for relief alleges her counsel was ineffective for failing to object to the two point "abuse of trust" enhancement applied to Petitioner at sentencing. Petitioner also contends this enhancement violated the Supreme Court's holding in *Blakely*. Petitioner did not, during the period for the presentation of objections to the PSR, nor during the sentencing hearing, raise any objection to the inclusion of this enhancement. Petitioner did not file an appeal of her sentence. Therefore, as discussed in relation to the claim regarding amount of loss, Petitioner is foreclosed from raising this issue directly. Petitioner therefore attempts to advance her argument through the rubric of ineffective assistance of counsel.

As noted above, to prevail on an ineffective assistance of counsel claim, Petitioner must show counsel's actions were objectively unreasonable, and that such actions prejudiced Petitioner. Petitioner advances no evidence to indicate her counsel was ineffective.[6] Additionally, Petitioner

---

[6] If the court were addressing the merits of Petitioner's underlying claim, it would also be without merit. In a recent Fourth Circuit opinion, the court included the following discussion of the availability of an "abuse of trust" enhancement:

> We have emphasized that the "position of trust" inquiry must focus on the relationship between the defendant and the victim from the perspective of the victim. *United States v. Gordon,* 61 F.3d 263, 269 (4th Cir.1995). "There must be a trust relationship between [the defendant] and his victim for the enhancement to apply." *United States v. Moore,* 29 F.3d 175, 180 (4th Cir.1994) (internal quotation marks and citation omitted) (alteration in original). . . . A sentencing court must "carefully distinguish between those arms-length commercial relationships where trust is created by the defendant's personality or the victim's credulity," [*United States* v.] *Bollin,* 264 F.3d [391,] 415 [2001] (internal quotation marks and citation omitted), and those "where a 'fiduciary or personal trust relationship exists' with [the victim], and the defendant takes advantage of the relationship to perpetrate or conceal the offense," *United States v. Koehn,* 74 F.3d 199, 201 (10th Cir.1996) (citation omitted). Only the latter circumstances justify the enhancement. At bottom, § 3B1.3's critical term-"position of public or private trust"-is "a term of art, appropriating some of the aspects of the legal concept of a trustee or fiduciary." *United States v. Garrison,* 133 F.3d 831, 839 n.18 (11th Cir.1998) (internal quotation marks and citation omitted). In other words, application of the enhancement "requires more than a mere showing that the victim had confidence in the defendant. Something more akin to a fiduciary

6

does not show that this court would have sustained any objection made to the enhancement.[7] As explained in the commentary to the Federal Sentencing Guidelines, "[f]or this enhancement to apply, the position of public or private trust must have contributed in some significant way to facilitating the commission or concealment of the offense (e.g., by making the detection of the offense or the defendant's responsibility for the offense more difficult)." United States Sentencing Guidelines, § 3B1.3 n.1 (Nov. 2004). Petitioner's assertions on this issue provide no credible avenue for relief. Therefore, Respondent is entitled to summary judgment on this claim and it is dismissed.

Petitioner argues in the alternative, and in her third ground for relief, that the sentence imposed by this court violates the Supreme Court's holdings in *Blakely*, as applied to the federal

---

      function is required." *United States v. Brunson,* 54 F.3d 673, 678 (10th Cir.1995). *Cf. Bollin,* 264 F.3d at 416 (§ 3B1.3 applies when the defendant has broad discretion to act on behalf of the victim, and the victim believes the defendant will act in the victim's best interest); *Moore,* 29 F.3d at 180 (defendant must be in a trust relationship with the victim that permits the defendant to "commit a difficult-to-detect wrong").

*United States v. Caplinger*, 339 F.3d 226, 236-37 (4th Cir. 2003). This certainly applies to Petitioner's case.

    [7]Petitioner makes no showing that this court would have acted differently had the court exercised a broader range of discretionary authority that exists post-*Booker*. *See, e.g. United States v. Hughes,* 401 F.3d 540, 546 (4th Cir. 2005), for an explanation of the sentencing procedure this court must follow under the post-*Booker* federal sentencing regime.

    If a two point enhancement had *not* been added for "abuse of trust," the offense level provided for by the guidelines–prior to any adjustment for acceptance of responsibility–would have been Offense Level 18, with a criminal history category I. *See United States v. Evans*, 416 F.3d 298, 301 n.4 (4th Cir. 2005) (noting that the proper guideline range for determining reasonableness would be the guideline range based on the facts "admitted before adjusting that range for acceptance of responsibility. Acceptance of responsibility is not a fact that is alleged in an indictment or presented to the jury. Neither is it a fact that the defendant can admit."). This offense level, combined with Petitioner's criminal history, produces a sentencing range under the guidelines of 27-33 months, a range actually *higher* than the sentence ultimately received by Petitioner. If the same calculation is made including Petitioner's three level reduction based upon her acceptance of responsibility, the Offense Level would be 15, resulting in a sentencing range of 18-24 months. The sentence Petitioner received– 24 months–falls within that range and would, therefore, be presumptively reasonable.

sentencing guidelines in *United States v. Booker*, 543 U.S. ___, 125 S. Ct. 738 (2005). As an initial matter, *Blakely* and *Booker* do not apply to Petitioner because during her plea colloquy, Petitioner admitted the conduct and stipulated to the loss for which she has been held accountable.[8]

Additionally, even if Petitioner had preserved some relevant objection to the sentence imposed, neither *Blakely* nor *Booker* has been made retroactive to cases on collateral review. The *Booker* decision applies only to those cases on direct appeal. *See Booker*, 125 S. Ct. at 768. A court entertaining a timely collateral attack on final convictions and sentences should conduct a three-step inquiry to determine "whether a constitutional rule of criminal procedure applies to a case on collateral review . . . ." *Beard v. Banks*, 542 U.S. 406, ___, 124 S. Ct. 2504, 2510 (2004).[9] In conducting such an analysis, a court must first determine when the petitioner's conviction became final. A court must then determine whether rule is actually "new," and if the rule is "new," whether it falls into one of the two retroactivity exceptions enunciated in *Teague v. Lane*, 489 U.S. 288 (1989).

The first step in the inquiry is to determine when the petitioner's conviction became final. This date is important because precedent existing at the time of conviction dictates how the court analyzes issues presented by Petitioner. Petitioner did not file a direct appeal, therefore her conviction became final on March 31, 2004. *See United States v.* Sanders, 247 F.3d 139, 142 (4th Cir. 2001) (for defendants who choose not to file direct appeal, conviction becomes final one year from entry of J&C order), *cert. denied*, 534 U.S. 1032 (2001). Thus, Petitioner's conviction was

---

[8]*See* note 4, *supra*.

[9]While the *Teague* directive originally applied in habeas corpus proceedings arising from state court convictions, the Fourth Circuit has held that *Teague* is applicable in § 2255 proceedings. *See United States v. Martinez*, 139 F.3d 412 (4th Cir. 1998), *cert. denied*, 525 U.S. 1073 (1999).

final prior to the decisions in both *Blakely* and *Booker* but after the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000). Therefore, courts' interpretations of *Apprendi* would be the controlling law at Petitioner's sentencing.

The second step in the analysis is to determine whether the rule Petitioner seeks to apply is "new," that is, whether the Constitution, as interpreted by precedent then existing, compels the rule. Courts must "'conduct criminal proceedings in accordance with the Constitution as interpreted at the time of th[ose] proceedings,' [and the Supreme Court has] held that '[t]he new rule principle . . . validates reasonable, good-faith interpretations of existing precedents made by [ ] courts." *Graham v. Collins*, 506 U.S. 461, 467 (1993) (examining finality of conviction in context of consideration of 28 U.S.C. § 2254 petition) (quoting *Butler v. McKellar,* 494 U.S. 407, 414 (1990)). After *Apprendi* but before *Blakely*, federal courts understood the statutory maximum for a particular offense to be found in the United States Code section setting forth the offense and its corresponding penalty. *See, e.g., United States v. Kinter*, 235 F.3d 192, 201 (4th Cir. 2000) ("[T]he current practice of judicial factfinding under the Guidelines is not subject to the *Apprendi* requirements–at least so long as that factfinding does not enhance a defendant's sentence beyond the maximum term specified in the substantive statute."), *cert. denied*, 532 U.S. 937 (2001). Not only did *Blakely* change the understanding of *Apprendi*'s statutory maximum, but one need look no further than *Blakely* itself–with its deeply divided court–to acknowledge that *Apprendi* did not compel the Supreme Court's holding in *Blakely*. *See Beard*, *supra*, 542 U.S. at ___, 124 S. Ct at 2513 n.5 ("the focus of the inquiry is whether *reasonable* jurists could differ as to whether precedent compels the sought-for rule"); *Sawyer v. Smith*, 497 U.S. 227, 237 (1990) (describing a new rule as a result "over which reasonable jurists may disagree"). Additionally, every appellate court to have considered this issue

has determined that the *Blakely* rule was new. *See*, *e.g.*, *Lloyd v. United States*, 407 F.3d 608 (3rd Cir. 2005); *Guzman v. United States*, 404 F.3d 139 (2d Cir. 2005); *Varela v. United States*, 400 F.3d 864 (11th Cir. 2005); *United States v. Price*, 400 F.3d 844 (10th Cir. 2005); *Humpress v. United States*, 398 F.3d 855 (6th Cir. 2005); and *McReynolds v. United States*, 397 F.3d 479 (7th Cir. 2005). This court agrees the *Blakely* rule, as applied in *Booker*, was new.

Third, having determined a rule is "new," a court must then consider whether the new rule falls into one of the two retroactivity exceptions enunciated in *Teague*. Retroactive application of new rules is allowed for "rules forbidding punishment 'of certain primary conduct . . . [or for] rules prohibiting a certain category of punishment for a class of defendants because of their status or offense.'" *Beard*, *supra*, 542 U.S. at ___, 124 S. Ct. at 2513 (quoting *Penry v. Lynaugh*, 492 U.S. 302, 330 (1989)).[10] The second exception is for "'watershed rules of criminal procedure' implicating the fundamental fairness and accuracy of the criminal proceeding." *Saffle v. Parks*, 494 U.S. 484, 495 (1990) (quoting *Teague*, *supra*, 489 U.S. at 311)). "That a new procedural rule is 'fundamental' in some abstract sense is not enough; the rule must be one 'without which the likelihood of an accurate conviction is seriously diminished.'" *Schriro v. Summerlin*, 542 U.S. 348, ___, 124 S.Ct. 2519, 2523 (2004) (quoting *Teague*, *supra*, 489 U.S. at 311)).

Courts that have conducted a retroactivity analysis in the context of a § 2255 petition have reached the conclusion that under the test enunciated in *Teague*, *Blakey* and *Booker* do not fit either

---

[10]A more extensive analysis under *Teague* might include a detailed determination of whether the new rule announced was either substantive or procedural in nature. For present purposes, it is not necessary to conduct such a discussion, as it is evident the *Blakely*/*Booker* decision is procedural instead of substantive, as it "regulates the manner of determining the defendant's culpability," *Schriro v. Summerlin*, 542 U.S. 348, ___, 124 S. Ct. 2519, 2523 (2004), not whether certain conduct is lawful or unlawful.

of these two narrow exceptions which would make the *Blakely* decision, as applied to the federal sentencing guidelines in *Booker*, retroactive. This court finds itself in agreement with those courts. *See Lloyd*, *supra*; *Guzman*, *supra*; *Varela*, *supra*; *Price*, *supra*; *Humpress*, *supra*; and *McReynolds*, *supra*. The Supreme Court's decision in *Blakely* did not place "certain primary conduct" beyond the power of Congress to regulate. Nor did *Blakely* place into question the accuracy of jury findings such that "there is an 'impermissibly large risk' of punishing conduct the law does not reach." *Schriro*, *supra*, 542 U.S. at ___, 124 S. Ct. at 2525 (quoting *Teague*, *supra*, 489 U.S. at 312-13).

Accordingly, the court finds the *Blakely* decision, as applied in *Booker*, is not retroactive to those cases on collateral review. Petitioner can obtain no benefit from these decisions.[11] Therefore, Respondent is entitled to summary judgment on Petitioner's third claim for relief, and it is dismissed.

**IT IS THEREFORE ORDERED** that Respondent's motion for summary judgment is granted in its entirety and the Petition is dismissed with prejudice.

**IT IS SO ORDERED**.


                                                   s/ Cameron McGowan Currie
                                                   CAMERON McGOWAN CURRIE
                                                   UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
October 17, 2005

C:\temp\notesB0AA3C\04-23312 Hagins v. USA e gr m sumjgm.wpd

---

[11] Even if the Supreme Court were to determine Petitioner's claim would somehow be covered under a retroactive application of *Booker*, Petitioner would be required to seek certification from the appropriate court of appeals before filing another § 2255 petition because she would then be filing a second or successive petition. *See* 28 U.S.C. §§ 2244(3)(A), 2255.

11